IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

Jacori Andre' Carter, )
    Plaintiff, )
)
v. ) 1:13cv1425 (LMB/JFA)
)
Benjamin Ulep, et al., )
    Defendants. )

FEB - 6 2015

## MEMORANDUM OPINION

Jacori Andre' Carter, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is no stranger to this Court, this being one of five lawsuits he has filed in the past four years. See Carter v. Farmer et al., Case No. 1:11cv979 (LMB/IDD) (§ 1983 action alleging excessive force, deliberate indifference to medical needs, and Due Process violations; medical claim dismissed pursuant to 28 U.S.C. § 1915A on November 10, 2011; excessive force claim transferred to the Western District of Virginia on January 9, 2012); Carter v. Clarke et al., Case No. 1:13cv1467 (LMB/TCB) (§ 1983 action alleging cruel and unusual punishment and Due Process violations; summary judgment granted for defendant on December 11, 2014); Carter v. Davis et al., Case No. 1:14cv151 (LMB/IDD) (§ 1983 action alleging cruel and unusual punishment and Due Process violations; summary judgment granted for defendant on January 16, 2015); Carter v. Davis et al., Case No. 1:14cv1065 (LMB/IDD) (§ 1983 action alleging cruel and unusual punishment, Due Process violations, and First Amendment violations; dismissed pursuant to 28 U.S.C. § 1915A on December 18, 2014). In addition, as this Court may take judicial notice of its own records and files, under Federal Rule of Evidence 201, particularly when the records of prior litigation are related to the matter under consideration, see Chandler v. O'Bryan, 311 F. Supp. 1121 (D.C. Okl.), rev'd on other grounds, 445 F.2d 1045 (10th Cir. 1971),

cert. denied, 405 U.S. 964 (1972); accord Lolavar v. De Santibanes, 430 F.3d 221, 224 n.2 (4th Cir. 2005), it is clear that plaintiff has a history of disciplinary problems at Sussex I State Prison ("Sussex I"). Between March 27, 2013, the date of his arrival at Sussex I, and May 9, 2014, plaintiff received 21 disciplinary infractions. See Carter v. Clarke et al., Case No. 1:13cv1467 (LMB/TCB), Dkt. No. 21.

The remaining defendants in the instant case are Dr. Benjamin Ulep and Nurse Marjorie Woodruff, who plaintiff charges violated his Eighth Amendment rights by showing deliberate indifference to his serious medical needs. In addition to his deliberate indifference claim, plaintiff initially brought an excessive force claim against several prison guards at Sussex I.[1] On July 10, 2014, the Court granted the guards' Motion for Summary Judgment. Dkt. Nos. 48, 49. The Court also granted in part a Motion to Dismiss filed by Ulep and Woodruff. Defendants Ulep and Woodruff then filed a Motion for Summary Judgment on the sole remaining issue of whether the delay in providing plaintiff with any pain medication for his injured knee in August of 2013 constituted deliberate indifference. Dkt. No. 51. Defendants have also filed a memorandum of law and affidavits to support their motion, as well as the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Dkt. Nos. 50, 52. On September 25, 2014, plaintiff submitted an affidavit in opposition to defendant's Motion. Dkt. No. 61. The defendants filed a Reply, and the plaintiff filed a counter-affidavit in response. Dkt. Nos. 62, 63. For the reasons that follow, defendants' Motion for Summary Judgment will be granted.

## I. Background

According to the affidavit of Lt. D. Williams, on August 5, 2013, plaintiff was on a

---

[1] In his amended complaint, plaintiff named Lieutenant Edward Curry and Officer Reece as two of these individuals. These individuals were never served with process and are not defendants in this action.

15-minute watch per instructions of the mental health staff. Memorandum in Support of Summary Judgment by Williams, Wells, Gainey, and Hull ("Corr. Defs.' Mem.") [Dkt. No. 36], Ex. 1 (Williams Aff.) ¶4. Plaintiff had covered his cell door window, was not responding to staff, and would not uncover the cell door window. In response to this situation, the Warden directed that the extraction team enter plaintiff's cell. Id. According to the affidavit of Correctional Officer D. Gainey, who was part of the extraction team, when the team entered plaintiff's cell he "was standing on the sink. He leaped to his bed and onto the extraction team, punching everyone." Corr. Defs.' Mem., Ex. 2 (Gainey Aff.) ¶ 4. Due to plaintiff's resistance to the extraction team's attempts to restrain him, the team had to "take [him] to the floor in order to be restrained." Id. Williams Aff. ¶ 9. After restraining plaintiff, the extraction team took him to the medical wing for "appropriate evaluation." Id. Ex. 4 (Wells Aff.) ¶ 4.

Plaintiff's uncontrolled behavior continued when he was brought to the infirmary. In her declaration, defendant Woodruff explains that on August 5, 2013, she was the Director of Nursing for the medical unit, but not the charge nurse. Defendants' Memorandum in Support of Motion for Summary Judgment ("Defs.' Mem.") [Dkt. No. 52], Ex. 1 (Woodruff Decl.) ¶ 7. It was not part of her normal job to assess and treat patients like plaintiff but his behavior – "yelling and screaming at custody staff, laying on the floor, and refusing to move -" caused her to investigate the commotion and help the staff. Id. Because plaintiff refused to move he had to be assisted to the x-ray room. Id.

Woodruff describes plaintiff's non-cooperation as making it "much more difficult to assess his condition and complaints of pain." Id. ¶ 8. It is uncontested in this record that Woodruff saw no objective signs consistent with either a serious injury or severe pain that required pain relieving medication. Id. ¶ 6. The x-ray taken on August 5, 2013 confirmed Woodruff's statement that

there was no evidence of a serious knee injury. The x-ray indicated that plaintiff's knee was not broken, and Woodruff observed only slight swelling in plaintiff's knee. Id. ¶¶ 5-6. Plaintiff did not see defendant Ulep, the doctor at Sussex I, on August 5. See, e.g., Am. Comp. [Dkt. No. 12] "Statement of the Claim," at 5 ¶ 2; Defs.' Mem., Woodruff Decl. ¶ 11(b). Woodruff informed plaintiff that because his knee was not broken he should return to his cell. Defs.' Mem, Woodruff Decl. ¶¶ 5, 11(a). She instructed him to follow up if he continued to experience pain, and discharged plaintiff without prescribing any pain medication. See id. Woodruff Decl. ¶ 5; Ex. 1A, at MR-90.

Plaintiff was then maintained in four-point restraints for two days, until August 7, 2013. See, e.g., Corr. Defs.' Mem., Williams Aff. ¶¶ 10-12. Between August 8, 2013 and August 10, 2013, plaintiff submitted several emergency grievances complaining of pain in his knee. Various nurses at Sussex I, not including Woodruff, responded to plaintiff's grievances, directing him to submit a request to be seen at Nurse Sick Call. See, e.g., Am. Compl. "Statement of the Claim," at 6 ¶ 6-9 ¶ 9; Ex. A, at 6-9. The nurses also told him to speak with the nurse on pill call duty, and to request to be taken to the medical wing in a wheelchair or stretcher, if needed. See id. Ex. A, at 8. On August 8, 2013, plaintiff submitted an informal grievance, complaining of the fact that he was "repeatedly being refused assessment by nurses and told to put sick call in which could take approximately 5 days before [he] would be seen." Id. at 9 ¶ 10; Ex. A, at 2. Woodruff responded to plaintiff's informal complaint on August 21, 2013. Id. This is the first documented interaction between Woodruff and plaintiff following her examination of him on August 5, 2013.

On August 11, 2013, after reviewing plaintiff's numerous complaints of pain, Dr. Ulep prescribed Motrin for plaintiff. See Defs.' Mem., Woodruff Decl. ¶ 9; Ex. 1A, at MR-89. Plaintiff received another x-ray on August 22, 2013. See id. Woodruff Decl. ¶ 11(d); Ex. 1A, at

4

MR-46. At this time, and for the first time, it was discovered that plaintiff's left knee was fractured in such a way that was "characteristic of a . . . ligament injury." Id. Woodruff Decl. ¶ 11(e); see also id. Ex. 1A, at MR-46, MR-86. Ulep met with plaintiff on August 29, 2013, and referred him to the orthopedic clinic at Southampton Memorial Hospital ("Southampton"). Ulep also prescribed Meloxicam, an additional painkiller, to plaintiff for a period of three months. Id.

It is undisputed that, between August 29, 2013 and December 12, 2013, plaintiff continued to see an orthopedist at Southampton for MRIs and other tests, and continued to be prescribed pain medication by Ulep. See, e.g., Defs.' Mem., Woodruff Decl. ¶ 11(f)-(l). Plaintiff had arthroscopic surgery on his left ACL on December 12, 2013. See id. Ex. 1A, at MR-61—MR-64. He has also undergone several follow up appointments and physical therapy. See, e.g., id. Ex. 1A, at MR-55—MR-57.

Plaintiff initially claimed that both the treatment of his knee and the defendants' failure to provide him with any pain medication immediately after his injury constituted deliberate indifference. On July 10, 2014, the Court granted defendants' Motion to Dismiss the allegations surrounding the defendants' initial treatment, leaving as the only issue whether the defendants' failure to prescribe plaintiff with any pain medication between August 5, 2013 and August 11, 2013, when Dr. Ulep prescribed Motrin, constituted deliberate indifference.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment as a matter of law is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet

that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. Analysis

Summary judgment in favor of defendants Ulep and Woodruff is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that the defendants were not deliberately indifferent to plaintiff's serious medical needs. To the extent that disputes of fact exist, these disputes are not material, and do not preclude the entry of summary judgment in favor of the defendants.

### A. Eighth Amendment Standard

To prevail on a claim of deliberate indifference to serious medical needs, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976); see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Thus, a plaintiff must satisfy two distinct elements to show that he is entitled to relief. First, he must provide evidence to show that he suffered from a sufficiently serious medical need. A medical need is "serious" if it has been diagnosed by a physician as mandating medical treatment, or if a lay person would recognize the need for medical treatment. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)); see also Cooper v. Dyke, 814 F.2d 941, 945-46 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Brown v. District of Columbia, 514 F.3d 1279, 1284 (D.C. Cir. 2008) (concluding that the "intense and often relentless pain" associated with untreated gallstones is sufficiently serious); but see Hall v. Holsmith, 340 F. App'x. 944, 947 & n.3 (4th Cir. 2009) (holding that flu-like symptoms did not constitute a serious medical need).

Second, a plaintiff must show that the defendants acted with deliberate indifference to his serious medical need. To act with deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). An assertion of mere negligence or malpractice is not enough to state a constitutional violation; instead, plaintiff must allege and demonstrate "[d]eliberate indifference . . . by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part by Farmer, 511 U.S. 825; see also Estelle, 429 U.S. at 106. In other words, a plaintiff must show that defendant's

7

actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851 (citations omitted). To act with deliberate indifference, a defendant must have actual knowledge of the potential risk of harm to an inmate; the mere fact that the defendant should have known of the risk is not sufficient to constitute deliberate indifference. See, e.g., Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001); Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("Deliberate indifference is a very high standard – a showing of mere negligence will not meet it.").

### B. Dr. Ulep

It is undisputed that the Dr. Ulep's first encounter with plaintiff's knee injury occurred on August 11, 2013, when he reviewed plaintiff's complaints of pain. See, e.g., Defs.' Mem., Woodruff Decl. ¶ 9. On that date, Ulep ordered that plaintiff begin taking Motrin for his pain. It is also undisputed that the severity of plaintiff's knee injury – a torn ligament – was not discovered until plaintiff underwent a second x-ray on August 22, 2013. At that time, Ulep referred plaintiff to the orthopedic clinic at Southampton and prescribed a stronger pain medication. See, e.g., Defs.' Mem., Woodruff Decl. ¶ 11(e). These undisputed facts belie any suggestion that Ulep was deliberately indifferent to plaintiff's injury or pain. Instead, the facts demonstrate that Ulep took appropriate action first to ameliorate plaintiff's pain, and then to secure necessary orthopedic care, including physical therapy and surgery. See, e.g., Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations."); Oglesby v. Abbassi, No. 3:12cv194, 2013 WL 4759249, at *7 (W.D. Va. Sept. 4, 2013) (finding that a doctor was not deliberately indifferent to an inmate's pain when he prescribed a lower dose of pain medication than plaintiff requested).

Although plaintiff may not have been satisfied with the speed at which he ultimately met with Ulep who prescribed pain medication, the fact that he did not receive Motrin on the day he was injured cannot be attributed to Dr. Ulep. In fact, plaintiff's first emergency grievance complaining of pain does not mention Dr. Ulep. See Am. Compl., Ex. A, at 6. The Eighth Amendment is only violated by a delay in medical care if the delay results in some "substantial harm" to the patient. See Webb v. Hamidullah, 281 F. App'x. 159, 166 (4th Cir. 2008); Shabazz v. Prison Health Servs., No. 3:10cv190, 2011 WL 3489661, at *6 (E.D. Va. Aug. 9, 2011). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." Garret v. Stratman, 254 F.3d 946, 950 (10th Cir. 2001); see also Webb, 281 F. App'x at 167 (substantial harm may be evidenced by an "marked increase in hernia[] size, frequent complaints of severe pain, or signs that [] hernia was becoming non-reducible . . . ."). As there is no indication in the record that Ulep delayed in providing pain medication, plaintiff's complaint against him fails.

### C. Nurse Woodruff

According to his affidavit, on August 5, 2013, plaintiff complained to Nurse Woodruff about "severe pain" in his left knee. The mere fact that Woodruff knew about plaintiff's complaints of pain, however, is not sufficient to hold her liable under the Eighth Amendment. See Snipes, 95 F.3d at 592 ("To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd. It would also be absurd to say . . . that the Constitution requires prison doctors to administer the least painful treatment."). To act with deliberate indifference, a defendant must intentionally disregard a known risk of serious harm. Until August 22, 2013, Woodruff had no knowledge that plaintiff suffered from a torn ACL. Medical officials are deliberately indifferent only if they "actually . . .

recognize[] that [their] actions [are] insufficient" to protect plaintiff from a risk of harm. Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (citing Brown v. Harris, 240 F.3d 383, 390-91 (4th Cir. 2001)). Absent such actual knowledge, there is no Eighth Amendment violation. See, e.g., Rich v. Bruce, 129 F.3d 336, 340 (4th Cir. 1997). As there is no evidence that Woodruff actually believed that plaintiff was at serious risk of harm on August 5, 2013, and as Woodruff provided treatment in accordance with her medical training, she did not show deliberate indifference to plaintiff's medical needs.

As discussed above, when Woodruff examined plaintiff's knee on August 5, 2013, she did not observe any objective signs of a serious injury and the x-ray showed no problems. Therefore, even though Woodruff did not prescribe plaintiff pain medication, she did not ignore his needs, and she treated his injury in accordance with her medical judgment. Cf. Johnson v. Quinones, 145 F.3d 164, 169 (4th Cir. 1998) (doctor who involved other people in the treatment of an inmate and made his best efforts to treat the inmate's condition did not recklessly disregard a serious medical condition). As Woodruff did not actually believe that plaintiff was at risk of serious harm, and given his obstreperous behavior, the Court will not second-guess her medical judgment. See, e.g., Neal v. Stanford, No. 7:10cv163, 2010 WL 1727464, at *2 (W.D. Va. Apr. 28, 2010) (internal citations omitted) ("The nurse, based on her medical expertise or on consultation with someone else in the medical unit, decided that missing one dose did not present any significant risk to Neal's health. The court cannot second guess such medical judgments."). Plaintiff's allegations amount to no more than a disagreement with Woodruff's medical judgment. Such a disagreement is insufficient to establish deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985) (internal citations omitted).

Plaintiff states that he told Woodruff several times on August 5, 2013 that he was suffering

from "excruciating pain" in his left knee, and that she herself noted that plaintiff's pain was worse "whenever touched or tries to move," Plaintiff's Counter-Affidavit in Response to Defendants' Motion for Summary Judgment ("Pl.'s Counter Aff.") [Dkt. No. 61], at 3-4 ¶ 5. Plaintiff also states that even a lay person could determine that someone suffering from severe pain requires some kind of medical attention. See id. at 5-6 ¶ B. Accordingly, he argues that the failure to provide him with pain medication resulted in the "unnecessary and wanton infliction of pain." Id. at 6 ¶ B. He also states that, because he was complaining of severe pain, "this statement alone should have been enough to referred [sic] him to defendant Ulep for evaluating." Id. at 8 ¶ D. Essentially, plaintiff states that Woodruff should have relied on plaintiff's own subjective statements about his level of pain to determine the severity of his medical needs, rather than on her professional observation and the x-rays, "because the x-rays doesn't shown [sic] torn ACL, [but] only broken or fractured bones." Id. Given the undisputed evidence that plaintiff's behavior was disruptive on August 5, 2013, and the lack of any significant objective signs that he was suffering from either a serious physical injury or sufficient pain to require pain medication, plaintiff has not met his burden of producing sufficient evidence to establish that Woodruff intentionally disregarded a serious medical need.

In general, superficial injuries such as those observed by Woodruff are not considered to be "serious" for purposes of the Eighth Amendment. See Gray v. Farley, 13 F.3d 142, 146 (4th Cir. 1993) (finding no deliberate indifference for treatment of minor injuries and a superficial scalp laceration); Koon v. Pack, No. 93-6368, at *1, 7 F.3d 224 (4th Cir. 1993) (finding no Eighth Amendment violation when inmate suffered only "a one and a half centimeter superficial scratch that barely bled," even though officials "may have been indifferent to the risk posed by [another inmate]"); Vansertima v. Dep't of Corr., No. 10cv3214 (RJD) (RER), 2012 WL 4503412, at *6

(E.D.N.Y. Sept. 28, 2012) (no Eighth Amendment violation when plaintiff's initial injury presented as a "superficial scratch," and he continued to receive treatment for further complaints for the next several months); Miller v. Mich. Dep't of Corr. Health Care Providers, 986 F. Supp. 1078, 1080 (W.D. Mich. 1997) (citing Hill v. Dekalb Reg'l Youth Det. Ctr, 40 F.3d 1176, 1187-88 (11th Cir. 1994)) ("While delay in providing treatment that is tantamount to the wanton infliction of pain may violate the Eighth Amendment, delay of treatment for superficial nonserious conditions does not."). Therefore, Woodruff, believing that plaintiff's injury was minor, did not ignore plaintiff's serious medical needs by not prescribing pain medication after his injury.

As for plaintiff's continued complaints of pain after August 5, 2013, it is undisputed that at least three members of the Sussex I nursing staff knew about plaintiff's complaints of pain between August 8, 2013 and August 10, 2013, from his emergency grievances stating that his knee was "swollen," that his knee would frequently "give out" on him, that he could not fully extend his leg, and that he was in continuous pain. See Am. Compl., Ex. A, at 6-9. Woodruff was not one of the nurses responding to these grievances, each of whom indicated that they did not believe that plaintiff's concerns constituted an emergency, and each of whom continuously told him to place a request to see the nurse at sick call. Id. There is no evidence in the record that Woodruff saw these grievances, and the only other evidence in the record of her interaction with plaintiff after August 5, 2013 was her response to his informal complaint on August 21, 2013. See id. Ex. A, at 2. It is therefore undisputed that Woodruff had no knowledge of plaintiff's complaints of pain between August 8, 2013 and August 10, 2013. Absent knowledge of any potential medical need by plaintiff, Woodruff cannot be liable for deliberate indifference to plaintiff's serious medical needs.

Accordingly, the evidence shows that the defendants did not act with deliberate

indifference to plaintiff's serious medical needs. When viewed in the context of the entire course of plaintiff's treatment for his torn ACL, this conclusion is even more apparent. In the months after injuring himself during his cell extraction, plaintiff received several types of pain medication, multiple consults with an orthopedist, arthroscopic surgery, and appropriate follow-up treatment including pain medication and physical therapy. Even if plaintiff suffered pain as a result of his injury, such treatment does not constitute deliberate indifference.

## V. Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment will be granted. An appropriate Order shall issue.

Entered this __6th__ day of __February__ 2015.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge